**Petition for Writ of Mandamus Granted and Opinion filed July 14, 2026.**



**In The**

# Fifteenth Court of Appeals

---

### NO. 15-25-00235-CV

---

### IN RE FRANK JACKSON, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**Business Court Division 11B**
**Harris County, Texas**
**Trial Court Cause No. 25-BC11B-00032**

---

## OPINION

"Under Texas law, attorneys are generally immune from civil liability to nonclients for actions taken within the scope of legal representation if those actions involve '*the kind of conduct*' attorneys engage in when discharging their professional duties to a client."[1] Here, former CEO Norman Thomas Barras sued his former employer for $350 million for wrongful termination of his ten-year

---

[1]    *Taylor v. Tolbert*, 644 S.W.3d 637, 642 (Tex. 2022) (emphasis added) (quoting *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 482 (Tex. 2015)).

employment contract, and added a claim against Frank Jackson, a general counsel affiliated with the company, for tortiously interfering with his contract. When Jackson raised the attorney-immunity defense in a Rule 91a motion to dismiss, Barras amended his petition to delete a reference to Jackson's role as "general counsel" to Reynolds's parent company and to add pleadings that Jackson's interference was done not as a lawyer but "as a business advisor."

But no matter how Jackson's conduct is characterized, for immunity purposes the question is whether rendering advice to a client in these circumstances is "'*the kind of conduct*' attorneys engage in when discharging their professional duties to a client."[2] When a "multi-billion-dollar" company (as the petition alleges) considers firing a former CEO with a potential claim for $350 million, it would be foolish for the company not to seek legal advice. Rendering advice in that context is *precisely* the kind of conduct that corporate attorneys and general counsels are expected to perform. Accordingly, we hold that the Business Court erred in denying Jackson's motion to dismiss based on attorney immunity.

## BACKGROUND

In 1970, Bob Brockman founded Universal Computer Systems Holding, Inc. ("UCS"). UCS later acquired The Reynolds and Reynolds Company ("Reynolds"), becoming its parent. Reynolds named long-time employee Norman Thomas Barras, Jr. CEO in 2020 after Brockman was indicted for tax evasion. Barras signed an amended written employment agreement on April 16, 2024 (effective January 6, 2024) with a ten-year term of employment. Reynolds reserved the right to terminate Barras at any time, but the type of termination mattered a lot: termination "for Cause" entitled Barras to accrued benefits only, while a termination "without Cause"

---

[2]     *Id.* (emphasis added) (quoting *Cantey Hanger*, 467 S.W.3d at 482).

entitled him to the compensation for the full ten-year term of the agreement, which Barras alleges is $350 million.

According to Barras's second amended petition, after Bob Brockman died in 2022, his wife Dorothy "assumed control of UCS, the parent company to Reynolds, as well as all other associated corporate entities under the UCS umbrella." Dorothy later hired Brockman's former attorney Frank Jackson and "installed him at Reynolds's headquarters in Houston," where he provided "basic day-to-day corporate advice" as a "business advisor." In October 2024, "disagreements began to arise between Barras and Dorothy," many of which Barras claims were "made up" based "on information provided by Jackson." By 2025, Jackson "had immersed himself in all details of Reynolds's business," even though he "was never employed by Reynolds," and was acting as "the eyes and ears of Dorothy Brockman," who "intended to find a way to push Barras out and likely install Jackson in [his] place."

By letter dated May 19, 2025, the law firm McDermott Will & Emery notified Barras on behalf of the Reynolds Board that it was terminating him immediately for cause. The letter stated that Reynolds hired McDermott to investigate several financing transactions and that the Board had determined Barras materially breached his employment contract, misappropriated assets or business opportunities, and "potentially engaged in embezzlement or fraud." The letter copied Jackson as "General Counsel of the Company" (throughout the letter, "the Company" refers to Reynolds).

The next day, Barras sued Reynolds for breach of his employment contract, and sued Dorothy Brockman and Jackson for tortious interference with that contract. The three defendants removed the case to the Business Court three weeks later. Barras filed a first-amended petition on July 14, 2025, repeating the same claims against each of the defendants.

Jackson timely filed a Rule 91a motion to dismiss the tortious interference

3

claim against him based on the attorney-immunity defense.[3] He argued that the claim had no basis in law because it sought to hold him liable for "core attorney conduct," pointing out that both of Barras's petitions alleged that Jackson served as "general counsel of UCS," Reynolds's parent company.

Before filing a response, Barras filed a second amended petition that deleted references to Jackson as general counsel, described him instead as a "business advisor," and added a laundry list of allegations that Jackson "had immersed himself in all details of Reynolds's business" that "had little to nothing to do with providing legal advice," including involvement in company investments, operations, technology, and product management. Barras's response to the Rule 91a motion claimed his new allegations about the "non-legal nature" of Jackson's interfering conduct showed attorney immunity did not apply.

After a hearing, the Business Court denied Jackson's motion to dismiss. This mandamus followed.

## DISCUSSION

"Rule 91a permits motions to dismiss based on affirmative defenses 'if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.'"[4] The affirmative defense here is the attorney-immunity defense, a "comprehensive affirmative defense protecting attorneys from liability to non-clients."[5] In reviewing such motions, a court "may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits

---

[3]    *See* TEX. R. CIV. P. 91a.3(a) ("A motion to dismiss must be filed within 60 days after the first pleading containing the challenged cause of action is served on the movant.").

[4]    *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020) (quoting TEX. R. CIV. P. 91a.1).

[5]    *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 47 (Tex. 2021).

4

permitted by Rule 59."[6] Whether pleadings have no basis in law or fact "is a legal question we consider de novo based on the allegations in the plaintiffs' live petition, which we must accept as true."[7] In this original proceeding, Jackson is entitled to mandamus relief if (1) the Business Court clearly abused its discretion by denying his Rule 91a motion, and (2) he lacks an adequate appellate remedy.[8] Jackson established both requirements.

## I. Clear Abuse of Discretion

### A. Advising a client on termination of its CEO is the kind of conduct attorneys undertake while discharging their professional duties

The attorney-immunity defense "applies in all adversarial contexts in which an attorney has a duty to zealously and loyally represent a client, including a business-transactional context."[9] Inevitably, zealous representation sometimes creates acrimony. But that duty cannot be compromised by the complaints of an adversary, because attorneys owe professional duties only to their clients, not to their adversaries. While numerous legal theories preclude claims against an attorney that might otherwise be actionable had they been asserted by someone *other than* a nonclient,[10] two are sufficient to bar the tortious interference claim asserted here.

The first is the attorney-client privilege. This is "the oldest and most venerated of the common law privileges of confidential communications," and "its preservation is essential to the just and orderly operation of our legal system."[11] The purpose of the privilege is "'to encourage clients to make full disclosure to their

---

6     TEX. R. CIV. P. 91a.6.

7     *In re Home Depot U.S.A., Inc.*, 2026 WL 1354748 at *1 (Tex. May 15, 2026).

8     *See In re Houston Specialty Ins. Co.*, 569 S.W.3d 138, 140 (Tex. 2019) (per curium).

9     *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 67 (Tex. 2021).

10     *See Cantey Hanger,* 467 S.W.3d at 487 n.1 (Green, J., dissenting) (collecting cases).

11     *Paxton v. City of Dallas*, 509 S.W.3d 247, 259 (Tex. 2017).

attorneys' and, in return, to allow clients to obtain full, fair, and candid counsel."[12] State law recognizes several exceptions to the privilege,[13] but speculation that some of an attorney's communications might have been nefarious or "just business advice" is not enough, as there is no way to tell without breaching the privilege.

The second is the attorney-immunity defense. For more than a century, it has been the rule in Texas law that "attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, *without making themselves liable for damages*."[14] Wrongful conduct by an attorney that would otherwise be actionable "is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client."[15] Yet immunity "will not protect a lawyer when his 'acts are entirely foreign to the duties of an attorney.'"[16]

To harmonize these rules, the test for attorney immunity is not what *actual* advice an attorney gave, as that would require violating the privilege. It is instead whether the conduct an opposing party challenges was not "'*the kind* of conduct' attorneys undertake while discharging their professional duties to a client."[17] For example, an attorney may be immune to claims by a nonclient arising from *drafting* a notice of intent to sue or *advising* a client to send it, but are *not* immune to defamation claims for *broadcasting* the letter to the press or on social media "for publicity purposes," because that does not fall within an attorney's "unique, lawyerly

---

[12]     *Id.* at 260 (quoting *Fisher v. U.S.*, 425 U.S. 391, 403 (1976)).

[13]     *See* TEX. R. EVID. 503(d).

[14]     *Landry's*, 631 S.W.3d at 47 (emphasis added) (quoting *Cantey Hanger*, 467 S.W.3d at 481 (quoting *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. App.—Dallas 1910, writ ref'd))).

[15]     *Id.*

[16]     *Id.* (quoting *Cantey Hanger*, 467 S.W.3d at 482).

[17]     *Taylor v. Tolbert*, 644 S.W.3d 637, 646 (Tex. 2022) (emphasis added) (quoting *Haynes & Boone,* 631 S.W.3d at 67).

capacity."[18] The defense applies to both trial and corporate counsel,[19] indeed to "lawyerly work in all *adversarial contexts* in which an attorney has a duty to zealously and loyally represent a client."[20] A conclusory claim that an opposing attorney engaged in tortious, fraudulent, or other wrongful conduct is not enough to avoid the defense;[21] "*the essential factual allegations* supporting" such a conclusion must be pleaded.[22] Nor can a basis in law be inferred from silence; "Rule 91a does not permit courts to infer misconduct absent supporting factual allegations."[23]

In his second amended petition, Barras alleged that Jackson "had previously served as legal counsel for [Bob] Brockman," "had acted as a trustee to the Brockman trust, which controls 99% of Reynolds," had left his previous law firm to provide "legal advice" to Bob Brockman and "day-to-day corporate advice" to Dorothy Brockman, the latter of whom "hired him and installed him at Reynolds's headquarters in Houston, although Jackson was never employed by Reynolds." He also alleges Jackson "had immersed himself in all details of Reynolds's business," and "inserted himself into areas of Reynolds's operations far removed from legal issues" including "changes to the Reynolds and UCS boards," meeting with "Reynolds employees on issues involving technology, operations, and product management," attending "strategic type meetings" at Reynolds to investigate its "difficulty getting business from publicly traded auto dealerships," and so on.

---

[18] *Landry's*, 631 S.W.3d 40 at 44.

[19] *See, e.g.*, *Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008) ("As an attorney, Chu had a fiduciary duty to further the best interests of his clients, the buyers; imposing a second duty to the sellers would inevitably conflict with the first.").

[20] *Taylor*, 644 S.W.3d at 646 (emphasis added).

[21] *See, e.g.*, *In re Home Depot*, 2026 WL 1354748 at *2 (holding that pleadings that did not allege defendant owned, controlled, or operated truck or its driver in a manner that would impose a legal duty of care toward others had no basis in law).

[22] *In re First Reserve Mgmt., L.P.*, 671 S.W.3d 653, 661–62 (Tex. 2023) (emphasis added).

[23] *In re Home Depot*, 2026 WL 1354748 at *4.

But we cannot infer or take as true things that Barras never pleaded in his second amended petition: that Jackson performed *no* legal duties for Reynolds or its affiliates, or that advice he gave Reynolds regarding Barras's termination was not "lawyerly" advice. Nor can we infer that his business duties as general counsel for interrelated corporate entities did not include legal issues that only a corporate attorney might recognize and address.[24] As one leading commentator has explained, only the last word in "general counsel" is a noun; the word *general* is instead an adjective describing the *scope* of counsel's duties.[25]

Rule 91a did not require Barras to plead specific advice showing Jackson's conduct was "entirely foreign" to the duties of a lawyer. But it did require him to plead "*essential factual allegations*" that, if proved at trial, could support a finding that rendering legal advice about terminating a CEO was not the kind of conduct that falls within a corporate attorney's duties in circumstances like these.[26] Barras never pleaded that, probably because it would have been preposterous if he had.

In his brief, Barras argues that Jackson's interference was not in an "adversarial context" here,[27] because he and Jackson worked for the same affiliated companies and were "ostensibly working towards the same goal of a successful business venture." But Barras never pleaded that Jackson ever represented him personally. The relevant context here is the work Jackson *performed for his client*, Reynolds, and the termination here was about as adversarial as it gets.

Barras's brief also complains that Jackson's Rule 91a motion improperly

---

[24]    *See General Counsel*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The most senior lawyer in a corporation's legal department, usu. also a corporate officer.").

[25]    *See* BRYAN A. GARNER, GARNER'S MODERN ENGLISH USAGE 500 (5th ed. 2022).

[26]    *In re First Reserve Mgmt.*, 671 S.W.3d at 661–62.

[27]    *See Taylor*, 644 S.W.3d at 646 ("The common-law attorney-immunity defense applies to lawyerly work in 'all adversarial contexts in which an attorney has a duty to zealously and loyally represent a client.'") (quoting *Haynes & Boone*, 631 S.W.3d at 67).

relied on his first amended petition, which was superseded by the second amended petition drafted in response to it. The text of Rule 91a plainly contemplates amendments in response to a motion to dismiss.[28] But that does not necessarily extend to artful pleading; as a general rule "the law should not reward artful pleading," and "courts should look to the gravamen or underlying nature of the claim and apply the law accordingly."[29] It is not entirely clear that Rule 91a was intended to allow affirmative defenses like attorney immunity to be avoided by simply deleting inconvenient truths, such as reference to a defendant as an attorney or as general counsel for a party.[30]

But we need not decide that here, since Barras's counsel (to their credit) concede that Jackson "was the general counsel for UCS, Reynolds's corporate parent," and that Dorothy Brockman "was the ultimate primary owner" of Reynolds. Those pleadings are more than enough to establish an attorney-client relationship between Jackson, Reynolds, and Brockman because:

- Rule 503(a)(1) of the Texas Rules of Evidence defines "client" to include a person or entity that "*consults* a lawyer with a view to obtaining professional legal services from the lawyer" or "*is rendered* professional legal services by a lawyer" (emphasis added);

- Rule 503(a)(2) extends that relationship to a "client's representative," defined as "a person who has authority *to obtain* professional legal services for the client or *to act* for the client on the legal advice rendered," as well as "any other person who, to facilitate the rendition of professional legal services to the client, *makes or receives* a confidential communication while acting in the scope of employment for the client" (emphasis added); and

---

[28]  *See* TEX. R. CIV. P. 91a.5.

[29]  *Pitts v. Rivas*, 709 S.W.3d 517, 525 (Tex. 2025).

[30]  *See In re First Reserve Mgmt.*, 671 S.W.3d at 663 ("Plaintiffs cannot, simply by amending their pleadings, avoid a determination of the issues in this proceeding.").

9

- Rule 503(a)(3) applies to Jackson as their "lawyer," defined to include "a person *authorized*, or who the client *reasonably believes* is authorized, to practice law in any state or nation" (emphasis added).

Barras's latest petition does not allege that he personally was ever Jackson's client, and the relationships alleged between Jackson, Reynolds, and Ms. Brockman establish that they were Jackson's clients or client representatives under the Texas rules. Barras's petition explicitly concedes that his employment termination was adversarial. The only conduct pleaded against Jackson as tortious interference was advice rendered to Brockman and Reynolds, allegedly "as a business advisor." But in this context any such advice is precisely the kind of conduct a corporate attorney is expected to render, so this claim is barred by the attorney-immunity defense.

## B.  A brief response to today's dissent

We briefly take note of and respond to the dissent accompanying today's opinion, which invites the Texas Supreme Court to call this Court to heel for failing to "avoid the unjust conclusion that the mere possession of a law license protects business advisors in their performance of business-related functions, especially when those advisors pursue substantial personal interests." *Post* at 11. We welcome correction when it is warranted,[31] but do not think that is true here.

The dissent argues that Reynolds "did not employ Jackson as general counsel or in any other capacity." *Post* at 2. But as noted above, an explicit attorney-client contract is not required to establish an attorney-client relationship under Texas law, and neglecting to plead such a contract does not exclude it. Agreements "regarding legal representation are not required in Texas, except for contingent fees, and until relatively recently have not been the norm."[32] While Barras's counsel argue that

---

[31]   *See Proverbs* 12:1 (New King James Version) ("Whoever loves instruction loves knowledge, But he who hates correction is stupid.").

[32]   *LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 244 (Tex. 2014).

Jackson's advice was not rendered in his "uniquely lawyerly capacity," they concede that Jackson had attorney-client relationships over the years with the Brockmans, "as well as all other associated corporate entities under the UCS umbrella." It is odd that today's dissent does not concede the same.[33]

We agree with the dissent that Barras pleaded "a host of allegations" about Jackson's activities that are not "the kind of conduct" that lawyers alone perform. *Post* at 6–7. But the dissent errs by adding a conclusion that Barras never pleaded: that this list of activities show that "Jackson's *alleged interference* occurred … while he was acting as a general business advisor." *Post* at 6 (emphasis added). Even a casual reader will note that *not one* of the 11 bulleted items in the dissent have anything to do with terminating Barras. Pleading that an attorney often does non-legal work is not enough to plead that the *precise work* for which he has been sued is not protected by attorney immunity.

Next, the dissent argues that the attorney-immunity defense may be suspended by pleadings that "paint a picture" that Jackson was "seeking to oust" the client's CEO (at the client's request), and was motivated by animus toward the CEO out of "his own self-interest" in taking his place. *Post* at 2. But Texas law does not purport to impose either altruism or the Golden Rule as limits on an attorney's duty to clients, nor is the lack of either an exception to the attorney-immunity defense. The inquiry instead "focuses on the *function and role* the lawyer was performing, not the alleged *wrongfulness*, or even asserted criminality, of the lawyer's conduct."[34] Barras's pleading that Jackson acted in his own self-interest did not cancel his duty of zealous

---

[33] Barras's second amended petition also relied on and attached as an exhibit the termination letter listing Jackson as the "General Counsel" of Reynolds. "When an original petition invokes a document in that way, the document is not mere 'evidence' but may instead be regarded as part of the petition itself." *MV Transp., Inc. v. GDS Transp., LLC*, 2026 WL 1261443, at *2 (Tex. May 8, 2026).

[34] *Taylor*, 644 S.W.3d at 642 (emphasis added).

11

representation or his immunity—any more than Barras's attorneys cancelled their own immunity by pleading for $350 million in damages.

Finally and for the record, we do not hold that Jackson "qualifies for attorney immunity as a matter of law";[35] we hold only Barras *did not allege* the "kind" of conduct required to preclude that defense. We do not consider evidence in making that holding; we decide only that Barras never pleaded that advising a client in a high-stakes legal dispute falls outside the kind of conduct that corporate attorneys provide. We do not "immunize the conduct of any attorney jockeying for a corporate position to promote his own self-interest"[36]; we hold only that attorneys (like jockeys) are not disqualified by their own self-interest if it coincides with their clients' interests (to win). Nor do we "run the risk of immunizing any business-related conduct performed by an attorney";[37] as the Texas Supreme Court has repeatedly noted, "other mechanisms are in place to discourage and remedy such conduct," including "sanctions, contempt, and attorney disciplinary proceedings" that fall short of handing counsel over to the tender mercies of their adversaries.[38]

Because the only tortious interference pleaded against Jackson is precisely the kind of conduct that is expected of corporate attorneys and general counsels, Barras's suit against Jackson has no basis in law. The business court thus abused its discretion by denying Jackson's Rule 91a motion to dismiss.

## II. No Adequate Remedy by Appeal

Jackson also established an inadequate appellate remedy. "The adequacy of

---

[35]    *Post* at 2.

[36]    *Id*.

[37]    *Post* at 11.

[38]    *Cantey Hanger*, 467 S.W.3d at 482. *See also Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020) (identifying remedies that remain available despite immunity); *Taylor*, 644 S.W.3d at 646 (same).

an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments."[39] Forcing Jackson to defend a baseless claim for $350 million against him while waiting for a final appeal would deprive him of his right to "true immunity from suit"[40] and cause "a significant waste of state and private resources."[41] By contrast, given Barras's repeated emphasis that Reynolds is a billion-dollar enterprise, it is hard to see any detriment to Barras if he must pursue his breach claim directly against the company that fired him. Jackson argued in his opening brief that this balance favors granting mandamus relief here, and Barras did not contest it or assert otherwise in his response brief. We hold that Jackson does not have an adequate remedy by appeal.

We recognize there may be some question whether the attorney-immunity defense is a defense to *suit* or to ultimate *liability*.[42] But until told otherwise, in the context of reviewing whether a suit is baseless under Rule 91a we follow the current rule that mandamus relief, though not available in every case, may be available in cases "in which the very act of proceeding to trial—regardless of the outcome— would defeat the substantive right involved."[43] That is the case here.

## CONCLUSION

As we stated preliminarily in our February 23 Order granting temporary relief, a "plaintiff cannot have it both ways; one cannot avoid an attorney-immunity defense

---

[39]  *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008).

[40]  *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 345 (5th Cir. 2016).

[41]  *Bethel*, 595 S.W.3d at 656.

[42]  *See In re Marshall*, 722 S.W.3d 17, 18 (Tex. 2025) (Young, J. and Sullivan, J., dissenting from denials of petitions for writs of mandamus).

[43]  *See In re McAllen Med. Ctr.*, 275 S.W.3d 458, 465 (Tex. 2008); *accord In re Illinois Nat'l Ins. Co.*, 685 S.W.3d 826, 842–43 (Tex. 2024); *In re Academy, Ltd.*, 625 S.W.3d 19, 32 (Tex. 2021); *In re Facebook, Inc.*, 625 S.W.3d 80, 87 (Tex. 2021).

to one claim by alleging collateral conduct related only to some other claim never pleaded." Without question, a decision to terminate a corporate CEO for cause, and thereby risk potential liability for $350 million, is the kind of conduct a corporate general counsel undertakes in discharging his or her legal duties.

We conditionally grant mandamus relief and direct the business court to vacate its order denying Jackson's Rule 91a motion and to dismiss him from the underlying suit. Our writ will issue only if the trial court fails to comply.

/s/ Scott A. Brister
Scott A. Brister
Chief Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.

Dissenting Opinion by Justice Farris.